# EXHIBIT C

# SEVERANCE AND RELEASE AGREEMENT

THIS SEVERANCE AND RELEASE AGREEMENT (the "Agreement"), is voluntarily entered into by and between Jeremy Smith ("Employee") and Sonic Automotive, Inc. d/b/a BMW of Nashville ("Employer") to clearly set forth the terms and conditions of Employee's separation from employment with the Employer.

WHEREAS Employer and Employee wish to amicably resolve all actual and potential disputes by and between them in accordance with the terms set forth below.

NOW, THEREFORE, for and in consideration of the mutual promises and other good and valuable consideration described below, the receipt and adequacy of which are acknowledged by Employer and Employee, both of them agree to the following:

1. **Separation Date.** Employer and Employee acknowledge and agree that Employee's last date of employment by Employer will be February 22, 2024 ("Separation Date"). Employee acknowledges and agrees he (a) has received Employee's salary through the Separation Date; (b) has received accrued but unused vacation/PTO in accordance with Employer's policies; and (c) has received payment for all unreimbursed business expenses incurred as of the Separation Date in accordance with Employer's policies.

2. **Severance Payment.** Employer agrees to provide Employee with a single lump-sum payment of $24,319.93, reduced by applicable payroll withholding. Payment will be issued to the Employee within 14 calendar days after the effective date of this Agreement as described in Section 12 below. Employee acknowledges that Employer is not obligated to provide Employee with the Severance Payment described in this Section 2 and does so solely in consideration of Employee's entry into this Agreement. Employee agrees that Employer does not owe Employee any other payments except as provided in this Agreement. Employee understands that Employee will receive the consideration provided under this Section 2 if, and only if, Employee signs and returns this Agreement no later than February 19, 2024, and fully complies with its terms.

3. **Medical Benefits:** Employee's group health coverage (if any) with Employer will continue through the Separation Date or as otherwise provided under Employer's group health plan. Pursuant to federal COBRA law, Employee and Employee's qualified beneficiaries (if any) may elect and pay for continuation coverage in accordance with election materials and other COBRA notices to be sent to Employee by the plan's designated administrator.

4. **No Authority.** Employee understands and agrees that effective as of the Separation Date, Employee is no longer authorized to incur any expenses, obligations or liabilities on behalf of Employer or to act on behalf of or represent himself as an employee of Employer.

5. **Return of Property.** Employee warrants and represents that as of the Separation Date, Employee returned to Employer all Employer property in Employee's possession or

control, including, but not limited to, credit cards, access cards, keys to Employer buildings or property, and other electronic equipment, and all Employer documents and papers, financial documents, customer documents, loan paperwork, customer lists, manuals, files, price lists, and all other trade secrets and/or confidential Employer information, and all copies thereof, in paper, electronic or in any other form, or that he has deleted and/or destroyed all copies of Employer's trade secrets and confidential that remained on his computer as of the Separation Date. Employee also warrants and represents that Employee has disclosed to Employer all passwords, codes, and any other mechanism by which Employee has or had access to Employer's computer systems or facilities. Employee promises not to access or attempt to access Employer's computer systems or software after the Separation Date, nor will Employee provide information to any other person or entity that will allow that party unauthorized access to Employer's computer systems or software or facilities. Employee further warrants and represents that Employee has not compromised, corrupted, misappropriated, damaged or inappropriately shared, uploaded, or downloaded data belonging or relating to Employer's computer systems or its business.

6. <u>Unemployment Benefits</u>. Employer agrees that it will not contest Employee's truthful application for unemployment benefits. However, Employer will truthfully respond to any inquiries from the Tennessee Employment Security Division.

7. <u>Waiver and Release of Claims by Employee</u>.

(a) With the exception of the obligations arising under this Agreement, Employee, on behalf of himself and Employee's personal representatives, agents, heirs, and assigns, knowingly and voluntarily, unconditionally and forever, waives and releases any and all claims, damages, causes of action and rights, whether known or unknown, contingent or noncontingent, contractual or otherwise against Employer and any of its related, affiliated or subsidiary organizations, and each of its and their respective directors, officers, agents, representatives and employees, past and present, and each of their successors and assigns ("Released Parties"). Employee makes this commitment even though Employee understands that Employee may not, as of this date, know all of the claims Employee may lawfully have against the Released Parties and that Employee is relinquishing the right to pursue any claims which Employee could have pursued before courts without having the opportunity to pursue those claims to a trial and have the damages, if any, set by a judge and/or jury. This release is intended to be as broad as the law allows and includes, without limitation, any claims of negligence, any other tort, contract, common law, equitable, constitutional or other statutory claims, including, but not limited to alleged violations of the Title VII of the Civil Rights Act of 1964, as amended, Employee Retirement Income Security Act of 1974, the Americans with Disabilities Act, the Equal Pay Act, the Age Discrimination in Employment Act of 1967, as amended, the federal Family Medical Leave Act, the Tennessee Human Rights Act, the Tennessee Disability Act, the Tennessee Public Protection Act, claims under Title 14 of the Tennessee Code, all wage claims, wrongful termination claims, discrimination claims, harassment claims, retaliation claims, and any and all claims arising under any federal,

state or other governmental statute, law, regulation or ordinance, and all claims for attorney's fees, costs and expenses.

(b) With the exception of any reports of complaints made to the United States Securities and Exchange Commission ("SEC"), Employee represents and warrants that Employee does not presently have on file, and further represents that Employee will not hereafter file, any claims, grievances, actions, appeals or complaints against the Released Parties in or with any state or federal court, board or before any other tribunal or panel of arbitrators, public or private, based upon any actions occurring prior to the date of this Agreement, including but not limited to any claims arising out of the cessation of Employee's employment with the Employer, unless otherwise permitted by law. If such an action or charge has been filed by Employee, or on Employee's behalf, except for any reports or complaints made to the SEC, Employee agrees not to participate in any such proceeding and Employee will use Employee's best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

(c) Notwithstanding the foregoing, this release does not include claims for breach or enforcement of this Agreement, claims that arise after the execution of this Agreement, claims to vested benefits under ERISA, unemployment compensation claims, or any other claims that may not be released by agreement pursuant to applicable law.

(d) Notwithstanding any provision in this Agreement, the parties agree that nothing in this Agreement shall be construed to interfere with Employee's right to file a charge, cooperate or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board, the Department of Labor (including the Occupational Safety and Health Administration), the SEC, and/or other federal, state, or local regulatory or law enforcement agency ("Government Agencies"). However, the consideration provided to Employee in this Agreement shall be the sole relief provided to Employee for the claims that are released by Employee herein and Employee will not be entitled to recover and agrees to waive any monetary benefits or recovery against the Employer in connection with any such claim, charge or proceeding without regard to who has brought such complaint, claim, or charge, except that nothing in this Agreement shall be interpreted to prohibit or prevent Employee from recovering a monetary award for information provided to any Government Agencies or limiting Employee's right to remedies through the unfair labor practice process pursuant to the National Labor Relations Act.

Further, the parties agree that nothing in this Agreement restricts or impedes Employee from: (i) exercising Employee's rights under Section 7 of the National Labor Relations Act, limiting Employee's ability, if afforded by applicable law, to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, or discussing terms and conditions of employment, (ii) testifying truthfully in any legal proceeding, including, but not limited to responding accurately to any inquiries or request for information made by the EEOC or any federal, state, or other regulatory authority or government agency, or (iii) discussing or disclosing information about unlawful acts in the workplace, such as sexual assault or harassment or discrimination or any other conduct that Employee has reason to believe is unlawful.

Sonic Automotive, Inc. Separation and Release Agreement - 3

Case 3:25-cv-00584   Document 1-3   Filed 05/23/25   Page 4 of 7 PageID #: 34

8. **Confidentiality of Settlement Amount.** Employee agrees to keep the financial terms regarding the Agreement confidential and not to disclose the financial terms to others; except to the Employee's attorney(s), tax advisor(s), and/or immediate family member(s) provided that they agree to keep the financial terms regarding the Severance Payment confidential.

9. **False Statements.** Employee agrees to refrain from making any statements that are maliciously untrue, that are made with knowledge of their falsity, or with reckless disregard for their truth or falsity, about the Employer or its employees, verbally or in writing, including without limitation posting on Glassdoor, Indeed, LinkedIn, Facebook, Twitter, Instagram, Snapchat, TikTok, YouTube, blogs, or other public forums. Notwithstanding the foregoing, Employee may testify truthfully pursuant to compulsory process.

10. **No Admission of Liability.** This Agreement shall not be construed as an admission by Employer or Employee of any wrongdoing, improper conduct, liability, breach of any agreement between Employer or Employee, or violation by Employer or Employee of any statute, law or regulation. Both parties agree that neither this Agreement nor any of its terms or conditions will be offered or received in evidence in any proceeding or used in any manner as an admission of wrongdoing or liability on either party's part except in connection with an action to enforce the terms of this Agreement.

11. **Prospective Employer Inquiries.** Employee agrees to direct all prospective employer inquiries to The Work Number. In response to any such inquiries, the Employer shall only provide Employee's dates of employment and last position held.

12. **Effective Date.** The Effective Date of this Agreement is the date it is signed by Employee. If the parties signed this Agreement on different dates, then the latter date shall be the Effective Date of this Agreement.

13. **Medicare Affirmation.** Employee affirms, covenants, and warrants that Employee is not a Medicare beneficiary and is not currently receiving, has not received in the past, will not have received at the time of payment pursuant to this Agreement, is not entitled to, is not eligible for, and has not applied for or sought Social Security Disability or Medicare benefits. Employee agrees and affirms that, to the best of Employee's knowledge, no liens of any governmental entities, including those for Medicare conditional payments, exist. Employee will indemnify, defend, and hold the Released Parties harmless from Medicare claims, liens, damages, conditional payments, and rights to payment, if any, including attorney's fees, and Employee further agrees to waive any and all future private causes of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A) *et seq*.

14. **Governing Law.** Interpretation and enforcement of this Agreement shall be governed by the substantive laws of the State of Tennessee without regard to its conflicts of law principles.

15. <u>Ownership of Claims</u>. Employee represents and warrants that Employee is the sole and lawful owner of all rights, title and interest in and to all released matters, claims and demands referred to herein. Employee further represents and warrants that there has been no assignment or other transfer of any interest in any such matters, claims or demands which Employee may have against the Released Parties.

16. <u>Changes to Agreement</u>. This Agreement may not be changed orally, but only in writing signed by all parties.

17. <u>Severability</u>. If any of the provisions of this Agreement shall prove to be invalid, void or illegal, it shall in no way affect, impair or invalidate any of the other provisions of this Agreement.

18. <u>Beneficiaries and Assignability</u>. This Agreement is binding on, and shall inure to the benefit of, the parties and their respective heirs, representatives, transferees, principals, estates, executors, administrators, predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, officers, directors, and employees.

19. <u>Entire Agreement</u>. This Agreement between Employer and Employee constitutes the entire agreement between the parties and it fully replaces and supersedes all prior arrangements, discussions and negotiations between the parties except with respect to Employee's vested benefits, if any, under any of Employer's employee benefit plans or programs.

20. <u>Advice of Counsel</u>. Each party acknowledges and agrees that it has entered into this Agreement only after careful review and consideration of the Agreement and of the circumstances leading to its execution, and each party further acknowledges that it has had the opportunity to consult with legal counsel of the party's choice prior to execution and delivery of this Agreement.

21. <u>Enforcement</u>. In any action to enforce any of the provisions of this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs, in addition to any other damages and remedies available at law or in equity.

22. <u>Counterparts</u>. This Agreement may be signed in counterparts, each such counterpart being as fully effective as if a single original had been signed. This Agreement may be signed and conveyed by facsimile or electronic mail via PDF and such signature will be binding on the person signing.

IN WITNESS WHEREOF, the parties have entered into this Agreement as of the Effective Date first set forth above.

EMPLOYER: Sonic Automotive, Inc.

By: <u>Kevin Gaither</u>

Its: <u>Regional Vice President</u>

Date: February ___, 2024

EMPLOYEE: <u>Jeremy Smith</u>

_____

Date: February ___, 2024